SEIDENSTRICKER FARMS *v.* Warren N. DOSS
and Etta A. Doss Family Trust, Warren N. Doss, Individually and
as Trustee of the Warren N. Doss and Etta A. Doss Family Trust,
Etta A. Doss, Individually and as Trustee of the Warren N. Doss
and Etta A. Doss Family Trust

07-786                                              270 S.W.3d 842

Supreme Court of Arkansas
Opinion delivered January 10, 2008

*Berry Law Firm*, by: *Russell D. Berry*, for appellant.

*Dover Dixon Horne, PLLC*, by: *Gary B. Rogers* and *Monte D. Estes*, for appellees.

DONALD L. CORBIN, Justice. Appellant Seidenstricker Farms appeals the Prairie County Circuit Court's order dismissing its complaint against Appellees Warren N. Doss and Etta A. Doss Family Trust, Warren N. Doss, both as trustee and individually, and Etta A. Doss, both as trustee and individually (collectively the "Dosses"). On appeal, Seidenstricker Farms raises two arguments for reversal: the circuit court clearly erred in finding that (1) Seidenstricker Farms's lease with the Dosses was properly terminated because they were required to give written notice to Seidenstricker Farms on or before June 30, 2001, pursuant to Ark. Code Ann. § 18-16-105 (1987);[1] (2) the 1993 lease contained a ninety-day termination provision because the lease did not address termination.

---

[1] Section 18-16-105 was repealed by the General Assembly when it enacted Act 1004 of 2007, the "Arkansas Residential Landlord-Tenant Act of 2007." *See* Ark. Code Ann. §§ 18-17-101 to -913 (Supp. 2007). However, section 18-17-802 provides, in pertinent part, that "[t]ransactions entered into before July 31, 2007 … remain valid and may be terminated, completed, consummated, or enforced as required or permitted by any statute or other law amended or repealed by this chapter as though the repeal or amendment had not occurred." Therefore, the repeal does not affect this case as all matters took place prior to July 31, 2007.

This case involves an issue of statutory interpretation; jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(6). We reverse and remand the circuit court's order of dismissal.

Seidenstricker Farms, or its predecessors, have leased and farmed the land at issue in this case since 1972. On March 29, 1993, a written lease for the term of January 1, 1993, through January 1, 1994, was executed between Seidenstricker Farms and John Auersperg providing for the rental and farming of Auersperg's land.[2] The lease contained the following condition:

> TO HAVE AND TO HOLD unto said TENANT from the date of January 1, 1993, until the first of January 1994, provided it satisfactory with both parties. After one party has given the other a 90 day notice in writing before the expiration of this lease which is accepted by the other party, the term of said lease shall be renewed or extended for another year under the same terms and conditions.

Auersperg died in July 1993. Subsequently, Seidenstricker Farms was informed that ownership of the farm had transferred first to Mrs. Doss and her sister, and then to the Dosses.

Although Seidenstricker Farms continued to farm the land until 2001, neither a written renewal of the lease nor a new lease was ever executed. Rather, at the end of each harvest, the two parties met to discuss the crop yield and other issues related to the farm. The parties never discussed whether Seidenstricker Farms was going to continue to farm the land, and both parties just continued on as they had the previous year. Specifically, Seidenstricker Farms continued to occupy and farm the land, and the Dosses continued to receive and accept annual rental payments.[3]

On September 24, 2001, the Dosses called Seidenstricker Farms to inform it that the lease would terminate at the end of 2001. Following this phone call, late in 2001, Seidenstricker Farms presented a reimbursement request to the Dosses for improvements made on the land. Mrs. Doss testified that she sent Seidenstricker Farms a check, but that the check was never cashed.

---

[2] Appellee Etta Doss, Auersperg's sister and guardian, executed the lease on his behalf.

[3] The rental payment consisted of a 25% share of the crop sales. This is the same payment percentage set forth and used in the 1993 lease. Furthermore, the Dosses received the payments directly from the Farm Service Agency and Riceland Foods following each harvest.

Consequently, according to Mrs. Doss, the Dosses still owe Seidenstricker Farms that money.

Then, on December 29, 2004, Seidenstricker Farms filed suit alleging that the Dosses had improperly terminated the lease. Seidenstricker Farms sought damages for loss of profits from crop production and for the cost of repairs and improvements on the land. Prior to trial, Seidenstricker Farms withdrew its claim for lost profits. Following a bench trial on February 21, 2007, the circuit court dismissed the case. Specifically, the court found that the conditions of the 1993 lease continued during the parties' relationship, the provision for ninety days' notice prior to expiration continued to apply, and the lease relationship was properly terminated. This appeal followed.

The present appeal is from a bench trial. Accordingly, our standard of review is not whether there is substantial evidence to support the finding of the circuit court, but whether the judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *Pulaski County v. Arkansas Democrat-Gazette, Inc.*, 371 Ark. 217, 264 S.W.3d 465 (2007). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed. *Id.* Facts in dispute and determinations of credibility are within the province of the factfinder. *Id.*

First, Seidenstricker Farms argues that the circuit court's finding that the lease with the Dosses was properly terminated was an error of law and clearly erroneous because written notice was required on or before June 30, pursuant to section 18-16-105. Specifically, Seidenstricker Farms claims that it leased the farmland under an oral lease, or, alternatively, was a year-to-year tenant. In response, the Dosses argue that, based upon *Lamew v. Townsend*, 147 Ark. 282, 227 S.W. 593 (1921), as well as the written language of the lease and the practice and conduct of the parties, the lease was not wrongfully terminated because the notice-of-termination requirements of section 18-16-105 do not control here.

### a. Lease Agreement

Agreements between landlord and tenant need not be in writing and may be implied in fact from the conduct of the parties

or by a verbal agreement. *See* 49 Am. Jur. 2d *Landlord and Tenant* § 28 (1995). This court has recognized that a tenancy from year to year may be created by holding over after the end of the originally agreed upon term without any new agreement and by paying rent according to the terms of the lease, and the landlord accepting the payment. *See, e.g., Brickey v. Lacy*, 245 Ark 860, 435 S.W.2d 443 (1968); *Lamew*, 147 Ark. 282, 227 S.W. 593. This acceptance is considered a renewal of the prior lease for a like period and upon like terms. *Lamew*, 147 Ark. 282, 227 S.W. 593. Where a lease contract stipulates that a party shall give notice of the intent to renew the lease within a certain length of time or prior to the termination of the lease, the giving of such notice is a condition precedent, and upon the nonperformance of the condition, the right to renew is forfeited. *See Bluthenthal v. Atkinson*, 93 Ark. 252, 124 S.W. 510 (1910). However, when a lease contains a condition precedent of notice of renewal, and no notice is given but the parties continue as though the lease has been renewed, there is a waiver of the notice provision and the terms of the original lease apply. *See Riverside Land Co. v. Big Rock Stone & Material Co.*, 183 Ark. 1061, 40 S.W.2d 423 (1931).

█ In the present case, Seidenstricker Farms executed a lease with Auersperg in March 1993. After Auersperg's death in July 1993, Seidenstricker Farms was informed of a transfer of ownership of the land. The 1993 lease was never explicitly renewed, and a new lease or agreement was never executed with either of the subsequent owners, including the Dosses. Nevertheless, Seidenstricker Farms continued to occupy and farm the land, and the Dosses received and accepted rental payments, in the same manner as set forth in the 1993 lease, from 1994 through 2001. This is a classic case of a tenancy from year to year. Seidenstricker Farms held over at the end of the lease, and the Dosses continued to accept payments of rent in accordance with the lease. Therefore, a tenancy from year to year was created and the terms and conditions of the 1993 lease apply.[4] Because we hold that a year-to-year tenancy existed, we will not address Seidenstricker Farms's argument that there was an oral lease.

---

[4] This is true even though the 1993 lease contained an explicit written notice of renewal condition because, in accordance with this court's holding in *Riverside Land*, 183 Ark. 1061, 40 S.W.2d 423, there was a waiver of this provision and the terms of the original lease apply.

*b. Properly Terminated*

Section 18-16-105 provides:

> The owner of farmlands which are leased under an oral agree-
> ment may elect not to renew the oral rental or lease agreement for
> the following calendar year by giving written notice by certified
> registered mail to the renter or lessee, on or before June 30, that the
> lease or rental agreement will not be renewed for the following
> calendar year.

In *Steele v. Murphy*, 279 Ark. 235, 650 S.W.2d 573 (1983), this court
held that the General Assembly intended that section 18-16-105
(previously codified as Ark. Stat. Ann. § 50-531 (Supp. 1981)) be
applied to tenancies from year to year. This court explained that, at
common law, a tenant from year to year was entitled to six months'
notice to vacate, and, by supplying the date in section 18-16-105, the
General Assembly had given landlords and tenants a "clear, simple and
codified" method of giving six months' notice as applied to tenancies
from year to year. *Id*. at 237, 650 S.W.2d at 574. Moreover, while
"oral notice, if timely given, has always been sufficient notice,"
section 18-16-105 "provides that the landlord may elect to use this
form of written notice." *Id*. at 238, 650 S.W.2d at 574.

As stated above, Seidenstricker Farms was a year-to-
year tenant. Consequently, the Dosses were required to give
notice of termination, written or otherwise, on or before June 30,
2001. They did not do this. Therefore, the lease was not properly
terminated.

Furthermore, and despite the dissent's analysis, this court's
holding in *Lamew*, 147 Ark. 282, 227 S.W. 593, does not control
the outcome of this case. There, a contract was entered into
between the parties, which included the following condition: the
lease is for a "period of one year, with the option to continue from
time to time as long as conditions are satisfactory to both parties[.]"
*Id*. at 284, 227 S.W. at 594. After examining the lease and the
conduct of the parties, this court held:

> [T]he effect of this contract and the actions of the parties under it
> would have been to create a tenancy from year to year if there had
> been no language in the contract to indicate a contrary purpose.
> But we must give some effect to the provision of the contract that

> it is "to continue from time to time so long as conditions are satisfactory to both parties hereto."

*Id.* at 286, 227 S.W. at 594. This court held that the parties contemplated that the tenancy might continue for longer than a year, but that the continuance was conditional upon it remaining mutually satisfactory. *Id.* Thus, it was this court's duty to give the contract the effect intended by the parties. *Id.* In so doing, this court held that the parties had the right to mutually reserve the right to waive the common-law requirement of six-months' notice if either party became dissatisfied, but that each party was entitled to reasonable notice from the other of an intent to terminate the contract. *Id.*

■ This case is distinguishable. In this case, the 1993 lease gave an explicit period of time for which the lease was to govern. Specifically, it stated: "TO HAVE AND TO HOLD unto said TENANT from the date of January 1, 1993, until the first of January 1994, provided it satisfactory with both parties." There is nothing within this provision that indicates, as the *Lamew* lease did, that the parties contemplated the continuation of the lease for more than one year if the arrangement remained mutually satisfactory to the parties. Rather, the "satisfactory" language used in the 1993 lease related solely to the one-year lease term. *See Unigard Sec. Ins. Co. v. Murphy Oil USA, Inc.* 331 Ark. 211, 962 S.W.2d 735 (1998) (holding that we give the words in a contract their obvious meaning). To hold otherwise would require this court to read into the contract words that are not there, which we will not do. *See Tyson Foods, Inc. v. Archer,* 356 Ark. 136, 147 S.W.3d 681 (2004) (explaining that this court will not read language into a contract that is simply not there).

Moreover, the dissent incorrectly concludes that "the language of the lease here contemplates that the parties could cut short the one-year lease period at anytime during a lease term." While it is true it is our duty to give the contract the effect intended by parties, there is nothing within the lease regarding termination, early or otherwise. Rather, the lease solely contemplated renewal by giving notification ninety days prior to the expiration of the lease, and as stated earlier, that renewal provision was essentially waived by the parties' conduct since the expiration of the original 1993 lease term. Consequently, *Lamew* does not control this case and the Dosses were required to give notice of termination in compliance with section 18-16-105.

Therefore, the circuit court erred in finding that the lease was properly terminated and dismissing the case.[5] We reverse and remand the case to the circuit court for proceedings on the issue of damages, if any.

Reversed and remanded.

BROWN and IMBER, JJ., dissent.

ANNABELLE CLINTON IMBER, Justice, dissenting. Because all of the terms of the 1993 lease apply here, I disagree with the majority's conclusion that the Dosses wrongfully terminated the lease by not giving Seidenstricker Farms six-months' notice under Ark. Code Ann. § 18-16-105 (Repl. 2003). The majority agrees that the terms and conditions of the 1993 lease apply to the hold-over, year-to-year tenancy. Yet, in its attempt to distinguish this court's holding in *Lamew v. Townsend*, 147 Ark. 282, 227 S.W. 593 (1921), the majority ignores the provision of the written lease that conditions the one-year lease period upon the mutual satisfaction of the parties.

This court's holding in *Lamew* is instructive on the issue of whether the lease in the instant case was wrongfully terminated. In *Lamew*, the parties contracted for a farmland lease, and the lease stated that the lease would last for the period of one year "with the option to continue from time to time *as long as conditions are satisfactory to both parties hereto.*" *Lamew v. Townsend*, 147 Ark. 282, 284, 227 S.W. 593, 594 (1921) (emphasis added). Our court read the "satisfactory" language as meaning that the parties contemplated the continuation of the lease for more than one year, but that the continuance was conditional upon the arrangement remaining mutually satisfactory to the parties. *Id.* Similarly, we recognized that under the law of contracts the parties were entitled to bind themselves in such a manner, and it was this court's duty to give effect to the parties intent. *See id.* The *Lamew* court thus determined that the parties intended the lease provision to allow for termination of the lease at anytime during the lease term despite the common-law requirement that a year-to-year tenant

---

[5] Because we find merit in Seidenstricker Farms's first argument for reversal, we will not address its argument that the 1993 lease did not contain a ninety-day termination provision.

be given six-months' notice of the landlord's intent to terminate the lease. *Id.* Our court explained its holding by stating,

> The dissatisfaction contracted against might have arisen within less than six months of the end of the year, and, even though these differences had previously arisen, they might become so accentuated when the crop was being harvested that one or the other of the parties might desire to terminate the tenancy. They had mutually reserved the right to do so. If the difference arose in the first half of the year, there would be time for the common-law notice of six months of the intention to terminate the tenancy, and the language quoted would be surplasage, as the right to terminate could be exercised whether cause for dissatisfaction had arisen or not. But the language quoted gave the right whether the dissatisfaction arose in the first half of or the last half of the year.

*Id.* at 286-87, 227 S.W. at 594. In sum, the *Lamew* court stressed that it was the parties' right to contract for the terms of the lease and to mutually reserve the right to waive the common-law requirement of six-months' notice if either party became dissatisfied with the business arrangement. *See id.* The court did, however, recognize that neither party had the right to act arbitrarily or capriciously, and each party was entitled to reasonable notice from the other of an intent to terminate the contract. *Id.*

In the instant case, the 1993 lease contains language similar to that used in *Lamew.* The lease states,

> TO HAVE AND TO HOLD unto said TENANT from the date of January 1, 1993, until the first of January 1994, *provided it* [sic] *satisfactory with both parties.*

Giving effect to the intent of the parties, and in light of our holding in *Lamew,* I must conclude that the language of the lease here contemplates that the parties could cut short the one-year lease period at anytime during a lease term. Just as in *Lamew,* if either party became dissatisfied with the business arrangement, that party could give the other notice of its intent to cut short the lease anytime during the lease term, as long as reasonable notice was given. The question of what constitutes reasonable notice is a question of fact, and accordingly, under our "clearly erroneous" standard of review, we should defer to the circuit court's decision that the lease was not wrongfully termi-

nated in this case. *Lamew v. Townsend, supra.* In sum, because all of the terms and conditions of the 1993 written lease apply to the hold-over, year-to-year tenancy,[1] including the provision that makes the one-year lease period subject to the satisfaction of both parties, I would affirm the decision of the circuit court.

BROWN, J., joins this dissent.

---

[1] The majority's use of the term "year-to-year" is somewhat inaccurate. Although the distinction may make little difference in the instant case because the lease was renewed for the term of one year, I wish to point out the difference between a true year-to-year tenancy and a periodic, holdover tenancy, or a renewal of a lease for a specific period. In cases in which the original written lease did not contain language that made specific reference to the conditions of renewal, but the tenant retained possession of the property and paid rent, a year-to-year tenancy controlled by the terms of the written lease was created. *See Lamew v. Townsend,* 147 Ark. 282, 227 S.W. 593 (1921); *Belding v. Texas Produce Co.,* 61 Ark. 377, 33 S.W. 421 (1895). However, in cases like the one at hand, in which the lease specifically stated that renewal of the lease will be for another "term," this court has held that by holding over and waiving notice, a tenant renewed the lease for another term. *See Riverside Land Co. v. Big Rock Stone & Material Co.,* 183 Ark. 1061, 40 S.W. 2d 423 (1931). This principle, of renewing the specific lease term designated in the written lease, applies whether the lease period is one year or less, or more than one year. Regardless of this distinction, *Lamew v. Townsend, supra,* is applicable to our analysis of the mutually "satisfactory" language in the lease at issue here.